# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

FONDA R. BOSTIC,                    :

     Plaintiff,                :
                         Case No. 3:15cv00109

vs.                                 :

                         District Judge Thomas M. Rose

CAROLYN W. COLVIN,                  :       Chief Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,            :

     Defendant.                :

## REPORT AND RECOMMENDATIONS[1]

## I.     Introduction

Plaintiff Fonda R. Bostic asserts that her health problems – mainly, fibromyalgia,

back pain, diabetes, obesity, depression, and anxiety – preclude her from full-time

employment.  On June 27, 2011, she protectively filed an application for Disability

Insurance Benefits and Supplemental Security Income, contending that her health problems

met the Social Security Act's definition of a "disability."  The Social Security

Administration found otherwise and denied her applications under both programs.  The

central conclusion driving the denials – that Plaintiff was not under a benefits-qualifying

disability – was made by Administrative Law Judge (ALJ) John S. Pope.  Plaintiff brings the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

present case challenging ALJ Pope's non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks an Order reversing ALJ Pope's decision and remanding this case to the Social Security Administration for payment of benefits or, at a minimum, for further proceedings.  The Commissioner seeks an Order affirming ALJ Pope's non-disability decision.

## II.    Background

### A.    Plaintiff and Her Testimony

On the date Plaintiff's asserted disability began – April 1, 2010 – she was 43 years old.  This placed her in the category of a "younger person" under Social Security regulations.  *See* 20 C.F.R. §§404.1563(c); 416.963(c).[2]  Plaintiff attended school through the eighth grade.  She worked in the past as a residential caretaker or caregiver, home health aide, routing clerk, and parts painter.

During the ALJ's hearing, Plaintiff testified that she took special-education classes during school.  She has tried to obtain a GED but has not been able to obtain one.  She has never received any formal vocational training, and she cannot read.  (Doc. #6, *PageID* #s 121, 149).

---

[2] The remaining citations will identify the pertinent regulations for Disability Insurance Benefits with full knowledge of the corresponding Supplemental Security Income Regulations.

Plaintiff explained that her physical impairments are fibromyalgia, diabetes, a spine and low-back impairment, shoulder impairment, neck pain, feet and toe pain, and problems using her hands. *Id*. at 124-25, 131. She experiences a sharp needle-like pain that shoots across her shoulder, back, hips, legs, and ankles "at least four to five times a week." *Id*. at 143-44. Her legs feel weak and she also experiences what feels like muscle spasms or like somebody sticking a knife in her toes and just grinding them at least five times per week. *Id*. at 144.

Plaintiff estimated that she can lift a maximum of four or five pounds and stand about five minutes before needing to take a break. *Id*. at 146-47. She could not estimate how long she would be able to sit in a normal chair per day because "I'm always sitting in a recliner with my feet up." *Id*. at 147.

Plaintiff testified that has anxiety, which causes panic attacks and chest pain that feels like a heart attack. *Id*. at 137. She noted that she was experiencing chest pain at the hearing. *Id*. at 137. She also experiences crying spells, flashbacks about being abused as a child, and trouble with concentration and memory. *Id*. at 140, 151-53. At the time of the ALJ's hearing, Plaintiff was receiving mental health treatment from a counselor – who she saw about every three weeks – and a psychiatrist, who she saw about every three months. *Id*. at 138-39. She takes many prescribed medications for her physical and mental problems. *Id*. at 130-32. Sometimes the medications help her, sometimes they don't. *Id*. at 132. But nothing else helps her. *Id*. at 145. She does not experience any medication side

effects.  *Id*. at 132.

As to her typical day, Plaintiff stated that she "usually just stir[s] ..." around the house, trying to get loosened up.  *Id*. at 133.  She lies down three or four times a day because she "just feel[s] so bad."  *Id*.  She uses a shower chair because she fell in the shower.  *Id*. at 136.  She tries to attend church every Sunday morning and Sunday night, but there are instances where she cannot make it due to bad pain.  *Id*. at 141.  Sometimes she tries to watch television or look at pictures in magazines.  *Id*. at 133.  She tries to walk, but the pain becomes too much after about two blocks.  *Id*. at 137.  She first lies down at about 11 a.m. and mostly stays in bed until her daughter fixes dinner.  *Id*. at 134-35.  Her daughter also does the laundry, and they use a dishwasher to clean the dishes. *Id*. at 136.  Plaintiff takes her night medications at about 8 p.m. and tries to get to sleep by 9:30.  *Id*. at 135.  She is able to drive, but her husband was "scared" for her to drive, and she has problems physically with the steering wheel and pedals.  *Id*. at 148.

### B.  Medical Evidence

In August 2011, psychologist Dr. Schulz examined Plaintiff at the request of the Ohio Division of Disability Determination.  (Doc. #6, *PageID* #s 561-70).  Dr. Schulz diagnosed Plaintiff with Depressive Disorder NOS (Not Otherwise Specified diagnostically), Anxiety Disorder NOS, and Borderline Intellectual Functioning.

Dr. Schulz opined that Plaintiff "is expected to be able to understand and apply instructions in the work setting within the borderline range of intellectual functioning."  *Id*.

at 568.  He also opined that Plaintiff is able to respond appropriately to coworkers and supervisors in a work setting.  *Id*. at 569.  And, Dr. Schulz believed that Plaintiff "is likely have some difficulty in responding appropriately to work pressure."  *Id*.

Dr. Schulz noted that Bostic was a victim of abuse as a child and described her family as "dysfunctional."  *Id*. at 562.  Dr. Schulz observed that her gait was slow, her posture was upright, and her eye contact was moderate.  *Id*. at 565.  Her affect was appropriate and congruent.  Her motor activity was calm, and her mood was euthymic.  *Id*.

Plaintiff reported being depressed, telling Dr. Schulz she was tired, weak, sad, nauseated, her nerves are "shot," that she had lost interest in things, cries, and has a poor appetite.  *Id*. at 565.  Her anxiety causes numbness in the side of her neck, chest pains, sweating, and difficulty breathing.  *Id*. at 566. Dr. Schulz opined that Bostic presented a valid and reliable self-report and psychosocial history, did not purposely under-exaggerate or over-exaggerate her symptoms, did not show significant inconsistencies in self-report information across the interview, and did not report unusual symptoms or improbable combinations of symptoms.  *Id*. at 567.

In late September 2011, Sue Carter, a Family Certified Nurse Practitioner, completed a Basic Medical form, indicating that Bostic suffered from depression, fibromyalgia, and irritable bowel syndrome.  *Id*. at 638-40.  Her treatment had involved lab work, and Ms. Carter noted, "consider counseling for depression."  *Id*. at 638.  Ms. Carter checked a box indicating that Plaintiff health status was "good/stable" with treatment.  *Id*.

She opined that due to her physical impairments, Bostic is limited to standing and/or walking for no more than two to three hours in an eight-hour workday and lifting no more than ten pounds at any time. *Id*. at 639. She further observed that Plaintiff has moderate limitations in ability to push/pull, bend, and reach. And, Ms. Carter opined that Plaintiff impairments were expected to last at least twelve months or more. *Id*.

In late October 2011, Dr. Kennington examined Plaintiff at the request of the Ohio Division of Disability Determination. *Id*. at 574-81. He diagnosed Plaintiff with 1) illiteracy and short-term memory loss; 2) fibromyalgia, "stable"; 3) irritable bowel syndrome; 4) temporomandibular joint disease; 5) chronic anxiety, "stable"; 6) chronic neck and back pain due to a motor vehicle accident and most likely due to degenerative disc disease; and 7) persistent left facial droop due to a remote episode of Bell's Palsy. *Id*. at 576.

Dr. Kennington noted tenderness to palpation over the upper and lower back musculature in the area of the paraspinal muscles as well as over the dorsal spine. *Id*. Tenderness to palpation was also noted over the shoulder area in the muscles of the shoulder girdle and the muscles of the hip region. *Id*. Plaintiff ambulated with a mildly antalgic gait, and she transferred from a seated position to a standing position with difficulty. *Id*. A straight-leg raising test did elicit pain in her hips and lower back. *Id*.

Based on objective findings, Dr. Kennington opined that Plaintiff was incapable of any moderate or heavy lifting, carrying, pushing, or pulling. He believed, however, that

Plaintiff was capable of light lifting, carrying, pushing, or pulling. According to Dr. Kennington, Plaintiff could sit, stand, and walk for brief periods of time – meaning no more than one hour at a time with adequate periods allowed for rest and change of position in light of her chronic neck and low back pain. *Id*. at 576.

In November 2011, Dr. Klyop reviewed the record and placed "great weight" on the opinions provided by Dr. Schulz and Dr. Kennington "because they were current, and complete reports." *Id*. at 188. Dr. Klyop opined that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about four hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb /ramps/stairs; never climb ladders/ropes/ scaffolds; and frequently stoop/kneel/crouch/crawl. *Id*. at 889.

In April 2012, Dr. Villanueva reviewed the record. He found Dr. Schulz's opinion "consistent and appropriate." *Id*. at 223. He also wrote, "Dr. Kennington's report is not consistent [with] the evidence and is given less weight. His opinion appears to be based more upon [Plaintiff's] report rather than the objective findings as [Plaintiff's] conditions and exam do not show such severe limitations." *Id*. Dr. Villanueva believed that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb /ramps/stairs; never climb ladders/ropes/ scaffolds; and occasionally kneel/crouch/crawl. *Id*. at 224.

In June 2012, Psychiatric Nurse Practitioner Amanda Rush completed a Mental Functional Capacity assessment for the Ohio Department of Jobs and Family Services. Ms. Rush indicated that Plaintiff suffers from Depressive Disorder NOS, which prevents her from successfully engaging in any type of gainful employment. *Id.* at 705. She identified Plaintiff's current disabling symptoms as "anxiety [and] depression w/ SI [with suicidal ideation]. *Id.* Ms. Rush reported that Plaintiff had marked limitations in her ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. *Id.* at 704. And, Ms. Rush opined that Plaintiff would be unemployable for a period of at least twelve months or more. *Id.* at 705.

## III. "Disability" Defined and ALJ Pope's Decision

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined by the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both benefit programs. *See Bowen v. City of New York*, 476 U.S. 467, 469-70

8

(1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a disability, ALJ Pope evaluated the evidence under the Social Security Administration's five sequential steps.  *See* 20 C.F.R. § 404.1520(a)(4).  ALJ Pope determined, in the main:

Step 1:     Plaintiff had not engaged in any substantial gainful employment after her claimed disability onset date.  (Doc. #6, *PageID* #85).

Step 2:     She has the severe impairments of fibromyalgia, cervical and lumbar degenerative disc disease, history of left shoulder rotator cuff tear, diabetes, obesity, major depressive disorder, anxiety disorder, and borderline intellectual functioning.  *Id*.

Step 3:     She does not an impairment, or combination of impairments, that meets or equals the severity of one in the Commissioner's Listing of Impairments.[3] *Id*. at 97-98.

Step 4:     Plaintiff's residual functional capacity – or, the most she can do in a work setting despite her impairments[4] – is light exertional work "with the following exceptions: she may stand or walk four hours and sit six hours throughout the day.  She must never climb ladders, ropes, or scaffolds.  She may only climb ramps and stairs; she may frequently balance, stoop, kneel, crouch, and crawl. [She] is limited to unskilled work involving only occasional changes in the work environment."  *Id*. at 98-99.  In light of these

---

[3] The Listings are found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[4] *See* 20 C.F.R. §404.1545(a); *see also Howard v. Commissioner of Social Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

9

limitations, Plaintiff cannot perform her past relevant work.  *Id*. at 105.

Step 5:       Plaintiff can perform a significant number of jobs that exist in the national economy.  *Id*. at 105.

The sum and substance of the ALJ's sequential evaluation led him to ultimately conclude, as noted previously, that Plaintiff was not under a benefits-qualifying disability.

## IV.    <u>Judicial Review</u>

The Social Security Administration's denial of Plaintiff's applications for benefits – here, embodied in ALJ Pope's decision – is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings.  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, substantial evidence supports the ALJ's factual findings when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

10

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

**V.    Discussion**

**A.    Medical Source Opinions**

Plaintiff contends that the ALJ erred by rejecting the opinions of treating nurse practitioner Ms. Carter and treating psychiatric nurse practitioner Ms. Rush and by cherry-picking the consultative examining opinions in order to fit his non-disability conclusion. Plaintiff maintains that the nurse practitioners' opinions are relatively consistent with Dr. Kennington's opinions, particular his opinion that Plaintiff was limited to sitting, standing, and walking for brief periods of no more than one hour at a time with adequate time for rest and position change.  Plaintiff also argues that the ALJ erred by applying little scrutiny to the state-agency source's opinions but applied rigorous scrutiny to Ms. Carter's and Rush's opinions.

The Commissioner contends, for various reasons, that the ALJ properly rejected the Dr. Kennington's opinion about Plaintiff's restricted ability to sit, stand, and walk; properly relied on the opinions of Drs. Klyop and Villanueva; and properly gave little weight to the opinions provided by Ms. Carter and Ms. Rush.  As to Dr. Schulz, the Commissioner maintains that the ALJ did not cherry-pick his opinions.  The Commissioner also asserts that the opinions provided by two other state-agency record reviewers supported Dr. Schulz's opinions.

Social security regulations recognize several different types of "acceptable" medical sources: treating physicians, nontreating yet examining physicians, and nontreating/record-reviewing physicians. *Gayheart v. Comm'r Social Sec*., 710 F.3d 365, 375 (6th Cir. 2013); *see* 20 C.F.R. §404.1502. Generally, ALJs "give more weight to the opinion from ... treating sources." 20 C.F.R. §404.1527. In some cases, the treating physician rule requires the ALJ to place controlling weight on a treating source's opinions.[5] *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). When the treating physician rule does not apply, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id*.

The regulations further provide "that '[g]enerally,' the ALJ assigns 'more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.'" *Miller v. Comm'r of Soc. Sec.*, __F.3d__, 2016 WL 362423 at *5 (6th Cir. 2016) (quoting, in part, 20 C.F.R. §404.1527(c)(1). The opinions of both examining and non-examining medical sources, including state-agency medical sources, are weighed under the factors of "supportability," "consistency," "specialization," and "other factors." 20 C.F.R. §404.1527(c); *see* Soc. Sec. Ruling 96-6p, 1996 WL 374180, *2 (July 2, 1996).

_____

[5] The treating physician rule applies when the source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record ...." *Rogers*, 486 F.3d at 242

In formulating his assessment of Plaintiff's residual functional capacity, the ALJ did not credit one aspect of Dr. Kennington's opinions – specifically, his opinion that Plaintiff was limited to sitting, standing, and walking for brief periods of time – meaning no more than one hour at a time with adequate periods allowed for rest and change of position in light of her chronic neck and low back pain. *Id*. at 576.  The ALJ found Plaintiff more able by concluding that she could stand and walk for four hours and sit for six hours in an eight-hour workday. *Id.* at 98, 102.

Contrary to Plaintiff's contention, the ALJ reasonably determined that the results of Dr. Kennington's opinions do not support his opinion about Plaintiff's sitting, standing, and walking limitations.  Doing so, the ALJ referred to Dr. Kennington's statement that Plaintiff presented with a mildly antalgic gait and was tender in her spine. *Id*. at 102, 576. The ALJ also considered that neurologically, Plaintiff's sensory examination was intact; her deep tendon reflexes were intact and symmetrical in the lower extremities; and her range of motion testing was completely normal in all joints. *Id*. at 102, 576.  In this manner, the ALJ applied the supportability factor and substantial evidence supports his application of this factor. *See* 20 C.F.R. §404.1527(c)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion....").  The ALJ's decision to discount Dr. Kensington's sit, stand, and walk

limitations was also supported by the opinions of the state agency reviewing physicians –

Drs. Klyop and Villanueva.  Dr. Klyop considered Plaintiff's allegations and reviewed the

record evidence before him, including Plaintiff's treatment records and Dr. Kennington's

report.  *Id*. at 170-73, 176.  Based on this review of the evidence, Dr. Klyop opined that,

considering her fibromyalgia and obesity, Plaintiff could occasionally lift and/or carry up

to 20 pounds and frequently lift and/or carry up to 10 pounds; stand and/or walk for a total

of four hours and sit for a total of six hours in an eight-hour day; occasionally climb ramps

and stairs, but never climb ladders, ropes, or scaffolds; and frequently balance, stoop,

kneel, crouch, and crawl.  *Id*. at 177.  Although the ALJ certainly could have been clearer

about the factors that led him to place considerable weight on Dr. Klyop's opinions, the

ALJ did not err because Dr. Klyop's opinion was based on a review of the record evidence

and because the ALJ found Dr. Klyop's opinion to be more consistent with the overall

evidence.  And, as the Commissioner correctly points out, state agency physicians are

"highly qualified physicians ... who are experts in Social Security disability evaluation." 20

C.F.R. §404.1527(e)(2)(i).  Because Dr. Klyop's opinion was based on a review of the

record evidence and because the ALJ found Dr. Klyop's opinion to be more consistent with

the overall evidence, the ALJ reasonably afforded it considerable weight.  *See, e.g., Bailey*

*v. Comm'r of Soc. Sec*., 413 F. App'x 853, 855-56 (6th Cir. 2011) (state agency physician

opinion may outweigh examining physician).

The ALJ's consideration of Dr. Kennington's opinion was also supported by Dr.

14

Villanueva, another state agency reviewing physician.  Dr. Villanueva considered Dr. Kennington's opinion and opined that it was inconsistent with the evidence and based more on Plaintiff's self-report than on the objective findings, as Plaintiff's conditions and exams did not show such severe limits.  (Doc. #6, *PageID* #210).  The ALJ considered Dr. Villanueva's assessment of Dr. Kennington's opinion when determining the weight to give Dr. Kennington's opinion.  *Id*. at 102.  Because Dr. Villanueva based his opinion of Dr. Kennington's limitations on the objective medical record, it was reasonable for the ALJ to consider it when deciding how much weight to place on Dr. Kennington's opinion.

In sum, based on the objective evidence as well as the opinions of Dr. Klyop and Dr. Villanueva, the ALJ reasonably gave little weight to Dr. Kennington's sit, stand, and walk limitations.

Plaintiff's contention that the ALJ erred by not considering the regulatory factors in weighing Dr. Klyop's opinion lacks merit.  The ALJ indicated that he gave Dr. Klyop's opinion considerable weight because he found it consistent with the overall evidence.  *Id*. at 102.  The ALJ explained that in evaluating Plaintiff's ability to stand and walk, he weighed Dr. Klyop's opinion against that of Dr. Villanueva, who opined that Plaintiff retained the ability to stand and walk about six hours in a workday.  *Id*. at 176, 210.  Yet, given the record evidence supporting Plaintiff's difficulties due to pain tolerance, fibromyalgia, and obesity, the ALJ decided to further restrict Plaintiff's standing and walking, and thus gave more weight to Dr. Klyop's opinion than Dr. Villanueva's opinion

15

about Plaintiff's standing and walking limitations.  *See id*. at 102.  Doing so, the ALJ

reasonably considered the consistency of Dr. Klyop's opinion with the record evidence.

*See* 20 C.F.R. §404.1527(c)(4) ("Consistency. Generally, the more consistent an opinion is

with the record as a whole, the more weight we will give that opinion.").  Thus, the ALJ

considered relevant regulatory factors when weighing Dr. Klyop's opinion.

Plaintiff further challenges that ALJ's evaluation of the opinions by Ms. Carter, a

family certified nurse practitioner, and Ms. Rush, a psychiatric nurse practitioner.

Although both Ms. Carter and Ms. Rush treated Plaintiff, their status as certified nurse

practitioners means, under the regulations, that they are not "acceptable" medical sources.

20 C.F.R. §404.1513(d)(1) (specifying that nurse practitioners, among others, are not

acceptable medical sources).  Social Security Ruling "explains that opinions from

non-medical sources who have seen the claimant in their professional capacity should be

evaluated by using the applicable factors, including how long the source has known the

individual, how consistent the opinion is with other evidence, and how well the source

explains the opinion."  *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 541 (6th Cir. 2007)

(citing *Martin v. Barnhart*, 470 F.Supp.2d 1324, 1328-29 (D.Utah 2006) (citing Soc. Sec.

Ruing 06-03P, 2006 WL 2329939 at *5-*6).  The ALJ reasonably gave Ms. Carter's

opinion little weight for several reasons.  The ALJ considered that Ms. Carter failed to

provide any explanation, including physical examination findings, in support of her

limitations.  *Id*. at 103, 639. The ALJ accurately pointed to the fact that Ms. Carter saw

Plaintiff on seven occasions between October 2010 and September 2011. *Id*. at 103, (referring to Exhibits B3F and B19F). Plaintiff does not point to any evidence from Ms. Carter's notes supporting her opinion, and a review of Ms. Carter's notes reveal few abnormalities on examination. *See id*. at 103, 548-51, 553-54, 879. The ALJ also considered that despite diagnosing fibromyalgia and irritable bowel syndrome, Plaintiff's only medications were two psychotropic medications and a hormone replacement medication. On the form Ms. Carter completed, she indicated that Plaintiff's health status was "good/stable with treatment." *Id*. at 103, 638. The ALJ reasonably considered that such inconsistent evidence undermined Ms. Carter's opinion. Ms. Carter, moreover, provided virtually no details about Plaintiff's treatments, except by referring to "Labs" and "consider counseling for depression." *Id*. at 638. And, Ms. Carter did not explain her opinions but instead referred to "Section II," which likewise did not contain any meaningful explanation for her opinions about Plaintiff's work limitations. *Id*. at 638-39. And, Section II contains Ms. Carter's indication that Plaintiff's health status is "good/stable" with treatment. *Id*. at 638.

As to Plaintiff's contentions regarding Ms. Rush's opinions, the ALJ placed little weight on her opinions for several reasons. The ALJ correctly considered that Ms. Rush provided no narrative explanation for her opinion. *Id*. at 104, 704-05. The ALJ also considered that Ms. Rush indicated that Plaintiff's limitations were due to symptoms of anxiety and depression, except for suicidal ideation, and Ms. Rush did not explain how

such symptoms debilitated Plaintiff. *Id*. at 104, 704-05. With regard to the suicidal ideation, the ALJ considered that the treatment notes indicated that Plaintiff's treatment had been successful in alleviating her suicidal ideation, by July 2012, and both Plaintiff's social worker and psychiatrist indicated that she no longer experienced suicidal ideation. *Id*. at 93, 104, 772, 829. In addition, the ALJ considered that the mental health treatment notes reflected improvement in Plaintiff's condition with medication. *Id*. at 93, 104, 817-18, 821-22, 829-30. Thus, the ALJ provided a reasonable explanation why he rejected Ms. Rush's opinion and substantial evidence supports the ALJ's explanation.

Further, Plaintiff fares no better in her challenges to the ALJ's consideration of examiner Dr. Schulz's opinions. Plaintiff argues that the ALJ cherry-picked parts of Dr. Schultz's opinion because he did not refer to Dr. Schulz's statement that Plaintiff may experience great difficulty keeping up with her peers in a wide variety of situations that require thinking and reasoning abilities. However, the ALJ specifically identified this aspect of Dr. Schulz's report and otherwise described Dr. Schulz's report in great detail. *Id*. at 89. The ALJ then went on to consider the functional limits indicated by Dr. Schulz. Dr. Schulz, moreover, even though he indicated that Plaintiff may have great difficulty keeping up with peers, he did not attach any particular functional work limitation to this potential difficulty. Instead, he found that Plaintiff would be able to understand and apply instructions in a work setting including her borderline intellectual functioning. He also indicated that Plaintiff "may experience a subjective sense of reduced effectiveness..." in

18

her abilities to maintain attention and concentration sufficient to perform simple tasks.  *Id.* at 568.  But Dr. Schulz then concluded, "objective changes at a level prompting concern by employers are not to be expected."  *Id.*  Because Dr. Schulz did not find that Plaintiff was more restricted due to the possibility she may have difficulty keeping up with peers, the ALJ did not cherry pick his report by considering only information that favored a non-disability determination.

Accordingly, Plaintiff's challenges to the ALJ's weighing of the medical opinions lack merit.

### B.     **Credibility**

Plaintiff contends that the ALJ failed to complete a thorough evaluation of the record concerning her subjective complaints, which the record consistently supports.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").  "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Id.*

The ALJ found Plaintiff's reports about her more severe limitations partially

credible.  (Doc. #6, *PageID* #100). The ALJ considered that, with the exception of a left

shoulder decompression with debridement in July 2010, Plaintiff's treatment regimen was

generally conservative.  *Id.*  The ALJ supported this by reviewing the record and citing

specific pages that support his review.  He also considered that Plaintiff's doctors had

repeatedly encouraged her to exercise, in order to help with her fibromyalgia pain, obesity,

and depression.  Substantial evidence supports this.  *See id.* at 510, 547-49, 553, 736,

772-73, 851-52, 962, 978, 991.  When questioned at the hearing about whether any of her

doctors had restricted her activities, Plaintiff reported that Dr. Ranginwala, her neurologist,

had advised her to exercise.  *Id.* at 129.

 The ALJ also considered that with regard to Plaintiff's mental health issues, after

beginning formal mental health treatment in early 2012, the treatment records indicated

that she improved with medication management and therapy.  The record contains

substantial evidence supporting this.  *See id.* at 772, 817, 821-23, 825, 829-31.  Plaintiff

testified that she did not have side effects from her medications  regimen.  *Id.* at 132.

Further, the ALJ considered the objective medical evidence and found that it did not

support the level of limitation alleged by Plaintiff.  For example, despite Plaintiff's

allegations of disabling back pain and knife-like pain in her feet, the ALJ considered that

an EMG of the lower extremities was normal, an MRI of the lumbar spine revealed no

more than mild pathology, and x-rays of the lumbar spine revealed only mild degenerative

changes.  *Id.* at 100.  Substantial evidence supports these observations.  *Id.* at 476, 479,

572, 937); *see McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) ("Subjective

claims of disabling pain must be supported by objective medical evidence in order to serve

as the basis of a finding of disability.  The ALJ also considered that Plaintiff's physical

examinations were largely unremarkable and often normal, with the exception of

tenderness, at times, associated with Plaintiff's fibromyalgia.  Substantial evidence

supports this.  *See id*. at 452, 510, 547-48, 575-76, 722, 774-77, 784-88, 805, 853-56,

930-91, 934-38, 968-70, 987-91.

Notably, although the ALJ discounted the extent of Plaintiff's allegations of

limitation based, in part, on objective evidence, the ALJ still considered Plaintiff's

fibromyalgia and low pain tolerance, which would not necessarily manifest through clinical

findings, when evaluating the extent of Plaintiff's limitations.  *Id*. at 102.  The ALJ

considered that the record evidence demonstrated that Plaintiff sought frequent treatment

for pain in various locations related to fibromyalgia flares.  *Id*. at 97.  Based on that, the

ALJ restricted Plaintiff to only light exertional work with additional standing and walking

limitations, as well as postural limitations. *See id*. at 88, 99, 102, 547.  Thus, the ALJ

considered and accounted for Plaintiff's limitations from fibromyalgia and pain.

The ALJ also considered that Plaintiff's then-newly diagnosed diabetes did not

cause any additional limitations when she followed her dietary recommendations.

Substantial evidence support this.  *See id*. at 913-18.  The ALJ noted that during a recent

evaluation with her internist, Plaintiff's blood sugars were not problematic, despite her

21

noncompliance with her medication.  *Id*. at 100, 968.  This further supported that ALJ's finding that Plaintiff's diabetes did not result in additional limitations.

In addition, as previously discussed, *supra*, §V(A), the ALJ considered various medical opinions that weighed against Plaintiff's allegations of complete debility.  Notably, the opinions from Drs. Klyop, Villanueva, and Schultz undermined Plaintiff's allegations of disabling limitations.  *See id*. at 170-93, 203-28, 561-69.  The ALJ also did not err by relying on Plaintiff's reported daily activities as part of his credibility analysis.  *See* 20 C.F.R. §404.1529(c)(i) (daily activities may be used to assess a claimant's allegations of limitation).  The ALJ considered that Plaintiff testified that she spent time with her daughter and grandchildren, was able to complete personal care tasks, and read magazines. She had a valid driver's license and attended church regularly.  *See id*. at 101, 120, 133-36, 141).  Plaintiff, moreover, reported to Dr. Schultz that she tried to help her daughter with her five children as much as she could; she enjoyed crocheting; she watched soap operas; and she shopped for groceries.  *Id*. at 89, 100, 564. She indicated that she prepared meals and did some cleaning, when her pain allowed her to.  (PAGE ID 89, 564). She made her own purchases and was able to make change (PAGE ID 89, 564).  Plaintiff's ability to perform such varied activities supported the ALJ's finding that her alleged limitations were not as severe as she reported.  *See Warner v. Comm'r of Soc. Sec*., 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").

Accordingly, for all these reasons combined, deference is due the ALJ's credibility assessment.

## IT IS THEREFORE RECOMMENDED THAT:

1.     The Commissioner's non-disability finding be affirmed; and

2.     The case be terminated on the docket of this Court.

February 12, 2016

_____s/Sharon L. Ovington_____
Sharon L. Ovington
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).